VULCAN METALS CO., Inc., v. SIMMONS MFG. CO.

VULCAN METALS CO., Inc., et al. v. SAME.

(Circuit Court of Appeals, Second Circuit. January 7, 1918. On Petition of Plaintiffs in Error for a Rehearing, February 13, 1918.)

Nos. 35, 36.

1. FRAUD ⟨key⟩11(1)—SALE—MISREPRESENTATIONS—PUFFING.
    Where the buyer of vacuum cleaners and materials and machinery for their manufacture was allowed full opportunity to inspect the cleaners and test them, misrepresentations concerning their qualities and powers should be deemed mere puffing talk, which would not give rise to an action for deceit.

2. FRAUD ⟨key⟩11(1)—MISREPRESENTATION—SALES.
    Where a seller of a large number of vacuum cleaners already manufactured, with materials and machinery for their manufacture, represented that they had not been put on the market, such representation was one of fact, the falsity of which would give rise to an action for deceit.

3. FRAUD ⟨key⟩64(1)—ACTIONS—EVIDENCE—QUESTION FOR JURY.
    Where a buyer asserted that the seller was guilty of false representations, amounting to deceit, the question whether the seller's representatives made the representations asserted held, under the evidence, for the jury.

4. FRAUD ⟨key⟩36—MISREPRESENTATIONS—DEFENSES—RETRACTION.
    A seller's retraction of a false statement made in negotiations prior to the time the parties entered into the contract is a good defense in an action for deceit by the buyer, and this is so where the seller delivered to the buyer a written retraction under circumstances warranting the belief that the buyer would inform himself of its contents.

5. FRAUD ⟨key⟩50—ACTIONS—BURDEN OF PROOF.
    Where a buyer asserted that the seller made a false statement, and the seller defended on the ground that it had retracted the same, the burden of proving the retraction is on the seller.

6. FRAUD ⟨key⟩64(1)—ACTIONS—JURY QUESTION.
    A statement in a written contract of sale, showing that vacuum cleaners sold had been placed on the market, cannot as a matter of law be treated as a retraction of the seller's misrepresentations that such appliances had not been placed on the market; but the question whether the statement was brought to the notice of the buyer's representatives is for the jury.

7. SALES ⟨key⟩124—RESCISSION—RETURN OF GOODS.
    Where a buyer made no offer to return articles delivered, he cannot, despite the seller's misrepresentations, rescind the contract, and escape liability on notes given for the purchase price.

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. BROKERS ⊚⇒94—AUTHORITY—REPRESENTATIONS.

A broker, who for a corporation negotiated a sale of vacuum cleaners, with machinery and materials for their manufacture, is without authority to make representations that such cleaners had not previously been put on the market.

### On Petition of Plaintiffs in Error for a Rehearing.

9. SALES ⊚⇒348(1)—SUBJECT-MATTER OF COUNTERCLAIM.

Under Code Civ. Proc. N. Y. § 501, declaring that the defendant may set up as a counterclaim a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of plaintiff's claim, or connected with the subject-matter of the action, and in an action on contract any other cause of action existing at the commencement of the action, a buyer, sued on notes given for the purchase price, cannot set up as a counterclaim an action of deceit for the seller's misrepresentations.

Hough, Circuit Judge, dissenting in part, and Learned Hand, District Judge, dissenting in part on rehearing.'

In Error to the District Court of the United States for the Southern District of New York.

Action by the Vulcan Metals Company, Incorporated, against the Simmons Manufacturing Company, begun in the state court and removed to the federal court, together with an action by the Simmons Manufacturing Company against the Vulcan Metals Company, Incorporated, and Albert Freeman, who counterclaimed. There was a judgment for the Simmons Manufacturing Company, defendant in the first action, and for it as plaintiff in the second, the counterclaim of the defendants Vulcan Metals Company, Incorporated, and Albert Freeman being dismissed, and the Vulcan Metals Company, Incorporated, and another bring error. Judgment in the action by the Vulcan Metals Company reversed, and judgment in action on notes modified, so as not to dismiss the counterclaim on the merits, and otherwise affirmed.

Writ of error to two judgments of the District Court for the Southern District of New York, entered in the first case upon a verdict directed by the court dismissing the complaint, and in the second case, upon a verdict directed by the court in favor of the plaintiff for the sum of $43,423.04. The complaint in the first action was for deceit, brought in the state court and removed for diversity of citizenship to the District Court. The complaint in the second was originally brought in the District Court, about a month after the first suit, and was upon three notes, for $15,000, $12,500, and $12,500, respectively. In the complaint on the second action the defendants set up the same facts which they laid in their complaint in deceit, and which they here pleaded as a defense to the action on the notes and as a counterclaim.

The gist of the complaint in the first action was the fraudulent procurement by the Simmons Manufacturing Company of a contract executed by the defendant Freeman on behalf of the Vulcan Metals Company, Incorporated, by which he purchased from the Simmons Company for $75,000 all the tools, dies, and equipment owned by it for the manufacture of its vacuum cleaning machines, all manufactured machines and unassembled parts, as set forth in a schedule thereto attached, and all inventions, applications, and letters patent owned by the Simmons Company in vacuum cleaners, together with certain proposed improvements to be made thereon. The complaint further alleges that the officers and agents of the Simmons Manufacturing Company made false representations as to the character of the vacuum cleaners so sold and the extent to which they had been used upon the market, to which the Vulcan

Metals Company, Incorporated, acted to its prejudice, because the machines and patents were totally inefficient and unmarketable. The notes sued on in the second cause of action were three of those given as part of the purchase price. The District Judge directed a verdict for the Simmons Manufacturing Company in both actions, upon the theory that no actionable fraud had been made out, and the correctness of this ruling is the turning point in the case.

The plaintiff in the first action was a corporation, of which Albert Freeman, one of the defendants in the second action, was a promoter. He was an indorser of the notes, and conducted the negotiations which resulted in the purchase by him of the vacuum cleaners on behalf of the plaintiff. He testified to certain representations made to him at the time as an inducement to his entering into the contract. These representations emanated in the first instance from one Flynn, who had been apparently authorized by the Simmons Manufacturing Company to act as a broker in the sale of the machines and the patents. Flynn's authority to represent the Simmons Manufacturing Company in respect of such representations would be a turning point in the case, except for the fact that Freeman swore that the president of the company, one Simmons, and its general counsel, Barnes, had repeated all of Flynn's statements during the negotiations and that he had relied upon them. It therefore became essential to determine, since Simmons was clearly authorized to represent the Simmons Manufacturing Company, whether the misrepresentations would support an action of deceit. They were of two classes—those touching the efficiency of the vacuum cleaner; and, second, that no attempt had been made to market the machines by the Simmons Manufacturing Company.

The first of these classes is substantially the same as those contained in a booklet issued by the Simmons Manufacturing Company for the general sale of the vacuum cleaners. They include commendations of the cleanliness, economy, and efficiency of the machine; that it was absolutely perfect in even the smallest detail; that water power, by which it worked, marked the most economical means of operating a vacuum cleaner with the greatest efficiency; that the cleaning was more thoroughly done than by beating or brushing; that, having been perfected, it was a necessity which every one could afford; that it was so simple that a child of six could use it; that it worked completely and thoroughly; that it was simple, long-lived, easily operated, and effective; that it was the only sanitary portable cleaner on the market; that perfect satisfaction would result from its use; that it would last a lifetime; that it was the only practical jet machine on the market; and that perfect satisfaction would result from its use, if properly adjusted. The booklet is in general the ordinary compilation, puffing the excellence and powers of the vacuum cleaner, and asserting its superiority over all others of a similar sort. Flynn made a demonstration of the cleaner to Freeman with borax sprinkled upon the carpet, and allowed him to take one for experiment, which he retained for some time.

The second class of misrepresentations was that the Simmons Manufacturing Company had not sold the machine, or made any attempt to sell it; that they had not shown it to any one; that it had never been on the market, and that no one outside of the company officials and the men in the factory knew anything about it; that they had manufactured 15,000 of them, but before making any attempt to market it they had been told by their agent that it would be a mistake for them to attempt to sell these along with their ordinary line, which was furniture; that on that account they had withdrawn them from the market and had never made any attempt to put them out. Sweetland, one of the promoters of the Vulcan Metals Company, Incorporated, swore that Flynn had stated that the machines had been marketed, but marketed successfully. There was therefore a discrepancy between the testimony of these two representations, but for the purposes of the action it is not here material, since the complaint was based upon the representation that the machines had not been sold.

There was evidence that the machines, when exploited by the Vulcan Metals Company, Incorporated, proved to be ineffective and of little or no value, and that their manufacture was discontinued by that company not very long

after they had undertaken it. There was also evidence that several of the Western agents of the Simmons Manufacturing Company had had the machines in stock and had attempted to market some of them; that they had been unsuccessful in these efforts, owing for the most part to the fact that the water pressures, where they had been sold, had not been sufficient to establish the necessary vacuum. Just what the vacuum was in the places where the machines were unsuccessful did not definitely appear in any of the proof.

Wilson B. Brice, of New York City (Charles H. Hyde, of New York City, of counsel), for Vulcan Metals Co., Inc.

Sullivan & Cromwell, of New York City (Clarke M. Rosecrantz and E. H. Sykes, both of New York City, of counsel), for Simmons Mfg. Co.

Before WARD and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1] The first question is of the misrepresentations touching the quality and powers of the patented machine. These were general commendations, or, in so far as they included any specific facts, were not disproved; e. g., that the cleaner would produce 18 inches of vacuum with 25 pounds water pressure. They raise, therefore, the question of law how far general "puffing" or "dealers' talk" can be the basis of an action for deceit.

The conceded exception in such cases has generally rested upon the distinction between "opinion" and "fact"; but that distinction has not escaped the criticism it deserves. An opinion is a fact, and it may be a very relevant fact; the expression of an opinion is the assertion of a belief, and any rule which condones the expression of a consciously false opinion condones a consciously false statement of fact. When the parties are so situated that the buyer may reasonably rely upon the expression of the seller's opinion, it is no excuse to give a false one. Bigler v. Flickinger, 55 Pa. 279. And so it makes much difference whether the parties stand "on an equality." For example, we should treat very differently the expressed opinion of a chemist to a layman about the properties of a composition from the same opinion between chemist and chemist, when the buyer had full opportunity to examine. The reason of the rule lies, we think, in this: There are some kinds of talk which no sensible man takes seriously, and if he does he suffers from his credulity. If we were all scrupulously honest, it would not be so; but, as it is, neither party usually believes what the seller says about his own opinions, and each knows it. Such statements, like the claims of campaign managers before election, are rather designed to allay the suspicion which would attend their absence than to be understood as having any relation to objective truth. It is quite true that they induce a compliant temper in the buyer, but it is by a much more subtle process than through the acceptance of his claims for his wares.

So far as concerns statements of value, the rule is pretty well fixed against the buyer. So. Dev. Co. v. Silva, 125 U. S. 247, 256, 8 Sup. Ct. 881, 31 L. Ed. 678; Gordon v. Butler, 105 U. S. 553, 26 L. Ed. 1166; Lehigh Zinc, etc., Co. v. Bamford, 150 U. S. 665, 14 Sup. Ct.

219, 37 L. Ed. 1215. It has been applied more generally to statements of quality and serviceability. Kimball v. Bangs, 144 Mass. 321, 11 N. E. 113; Neidefer v. Chastain, 71 Ind. 363, 36 Am. Rep. 198; Warren v. Doolittle, 61 Ill. 171; Hunter v. McLaughlin, 43 Ind. 38. But this is not always so. Iowa, etc., Co. v. Amer. Heater Co. (C. C.) 32 Fed. 735. As respects the validity of patents it also obtains. Reeves v. Corning (C. C.) 51 Fed. 774; Dillman v. Nedlehoffer, 119 Ill. 567, 7 N. E. 88; Huber v. Guggenheim (C. C.) 89 Fed. 598. Cases of warranty present the same question and have been answered in the same way. Chalmers v. Harding, 17 L. T. (N. S.) 571; Farrow v. Andrews, 69 Ala. 96; Bain v. Withey, 107 Ala. 223;[1] Gaar, etc., Co. v. Halverson, 128 Iowa, 603, 105 N. W. 108; Bartlett v. Hoppock, 34 N. Y. 118, 88 Am. Dec. 428. Contra, Elkins v Kenyon, 34 Wis. 93.

In the case at bar, since the buyer was allowed full opportunity to examine the cleaner and to test it out, we put the parties upon an equality. It seems to us that general statements as to what the cleaner would do, even though consciously false, were not of a kind to be taken literally by the buyer. As between manufacturer and customer, it may not be so; but this was the case of taking over a business, after ample chance to investigate. Such a buyer, who the seller rightly expects will undertake an independent and adequate inquiry into the actual merits of what he gets, has no right to treat as material in his determination statements like these. The standard of honesty permitted by the rule may not be the best; but, as Holmes, J., says in Deming v. Darling, 148 Mass. 504, 20 N. E. 107, 2 L. R. A. 743, the chance that the higgling preparatory to a bargain may be afterwards translated into assurances of quality may perhaps be a set-off to the actual wrong allowed by the rule as it stands. We therefore think that the District Court was right in disregarding all these misrepresentations.

[2, 3] As respects the representation that the cleaners had never been put upon the market or offered for sale, the rule does not apply; nor can we agree that such representations could not have been material to Freeman's decision to accept the contract. The actual test of experience in their sale might well be of critical consequence in his decision to buy the business, and the jury would certainly have the right to accept his statement that his reliance upon these representations was determinative of his final decision. We believe that the facts as disclosed by the depositions of the Western witnesses were sufficient to carry to the jury the question whether those statements were false. It is quite true, as the District Judge said, that the number of sales was small, perhaps not 60 in all; but they were scattered in various parts of the Mountain and Pacific States, and the jury might conclude that they were enough to contradict the detailed statements of Simmons that the machines had been kept off the market altogether.

The Simmons Manufacturing Company insists that there was no evidence that Simmons, who was the only party authorized to speak for that company, knew that the goods had ever been put on sale, and it is quite true that there was no such direct evidence. It is at least arguable whether the evidence was sufficient to allow a jury to

[1] 18 South. 217.

say that Simmons had known of these efforts. The results of the sales seem to have come to the knowledge only of the local agents, but we think a jury might say that the fact of their sale and the decision of the agents to sell them might have been authorized by the home office, and that Simmons might have known of both. While, therefore, if the case turned only upon Simmons' knowledge of the failure of the machines upon sale, we should hardly think the evidence sufficient to justify any inference that he did know, yet, since the fraud alleged was of the fact of sale alone, the evidence did not justify a directed verdict. Such a misrepresentation might have been material to Freeman in the execution of the contract, since, if he did learn that they had been on sale, he might well have insisted that the results of those sales should be disclosed before he proceeded. Sweetland's testimony to the contrary only discredits Freeman's statements; it cannot be itself the basis of any recovery.

[4-6] The next question is as to whether any such misrepresentations were conclusively cured by the recital in the contract of purchase as follows:

"The party of the first part [the Simmons Company] has been engaged in the manufacture of a certain type of vacuum cleaning machines, and the parties of the first and second part [the National Suction Cleaner Company] have been engaged in the sale thereof."

We all agree that an adequate retraction of the false statement before Freeman executed the contract would be a defense. Whether this be regarded as terminating the consequences of the original wrong, or as a correction of it, is of little importance. Further, we agree that, even if Freeman had in fact never learned of the retraction, it would serve, if given under such circumstances as justified the utterer in supposing that he would. For example, a letter actually delivered into his hands containing nothing but a retraction would be a defense, though it abundantly appeared that he had never read it. His loss might still be the consequence, and the reasonable consequence, but for the letter, of the original fraud; but the writer would have gone as far as necessary to correct that fraud, and we should not be disposed to hold it as an insurer that its correction should be effective. Judge WARD and I, however, do not think that such a recital in such a place was certain to catch the eye of the reader, and that therefore neither was the defendant's duty of retraction inevitably discharged, nor, what is nearly the same thing, did the defendant show beyond question that Freeman actually saw it. As a retraction the recital was a defense, and the defendant had the burden of proof. As notice to Freeman actually conveyed, it may have been only evidence upon the causal sequence between the wrong and the injury; but we attach no great significance to that distinction. The fact that he signed the contract appears to us to be some evidence upon which the jury might say that he could not have seen the recital. That depends upon how much importance they think he attached to the original representation, and that depends in turn upon what they thought of his story. If they did believe that the representation was of critical consequence in his decision, they might infer that he did not see it, or he would

not have gone on without some explanation. The very silence of the testimony upon the question might be taken to infer that he had not noticed it, even at the trial, just as it might also be taken to indicate that he had fabricated the whole story, and hoped the recital would escape the notice of the defendant. In any event, the interpretation of the whole transaction appears to us not to be so clear that reasonable people might not come to opposite conclusions upon it, and that involves a submission to the jury. It is perhaps of some importance that no allusion to the recital appears in the record.

[7, 8] It results from the foregoing that the judgment in the action for deceit must be reversed. In the action upon the notes the judgment upon the notes will be affirmed, because the Vulcan Metals Company, Incorporated, did not make any offer to return the machines, tools, and patents, which were not shown to be without any value, and consequently it was in no position to rescind. The judgment in that action dismissing the counterclaim must, however, be reversed, since the counterclaim involved the same facts as the complaint in the action for deceit. Flynn's agency appears in this record only by his declarations, and he was not shown to have any authority to speak for the Simmons Company. He was at most only a broker, and as such his representations in the negotiations as to the prior conduct of the Simmons Company touching sales of machines were not within his authority. The same applies upon this record to Barnes, the general counsel of the defendant. The proof of their authority may, of course, be different upon the next trial, as to which we naturally have nothing to say. However, no representations should be allowed as to the efficiency, durability, or economy of the cleaners, and the case should be tried upon the sole issue whether the defendant, through duly authorized agents, represented to Freeman that the goods had not been put on sale when in fact they had, whether this representation was material to Freeman's execution of the contract, whether the insertion of the recital into the contract was all that was reasonably necessary by way of retraction, and, if not, whether Freeman did not actually read it in the contract.

Judgment in the action of deceit reversed, and new trial ordered. Judgment in the action on the notes affirmed so far as it gives judgment on the notes, and reversed so far as it dismisses the counterclaim, and new trial upon the counterclaim ordered.

HOUGH, Circuit Judge (dissenting in part). The one point on which I cannot agree with the majority is the effect of the statement (it makes no difference whether it is called a "recital" or by some other name) contained in a contract which was signed by Freeman before he suffered any loss and at the moment he entered into obligation. The opinion of the court holds that this retraction or correction cannot be judicially held adequate or sufficient to conclude Freeman, if "in fact [he] did not see it." But he never denied seeing it; and the majority holding is in effect that, though signature of contract is admitted, and reading of all of it not denied, yet, in the absence of a specific admission of reading with comprehension, a case was made

for the jury, because there is no presumption of reading, or at least of the intelligent reading, of an admittedly signed contract.

A man is held to be bound by a contract because he is presumed to know what it means and says; as the greater includes the less, I should consider him bound to a comprehension of the ordinary meaning of the words employed. The present ruling seems to me but a direction as to how to give evidence upon another trial.

### On Petition of Plaintiffs in Error for a Rehearing.

PER CURIAM. We have concluded that the judgment in this action on the notes should be modified, so as to affirm the money judgment in favor of the plaintiff below, and to dismiss (but not upon the merits, as was done below) the counterclaim interposed. This counterclaim is substantially the action for deceit. That it did not constitute a defense was sufficiently set forth in our previous opinion.

[9] Whether the same allegations of fact can be used as a counterclaim is a question that depends upon the construction of section 501, Code Civ. Proc. N. Y. The cause of action is on the contract evidenced by the notes in suit; the counterclaim is in tort, and therefore the question is whether such tort cause of action arises out of the transaction set forth in the complaint or is "connected with the subject of the action." Underlying and governing this question of procedure is the legal fact that this action of deceit presupposes and recognizes a contract valid and enforceable. If there was not such a contract, this particular action of deceit could not exist, and no effort is or can be made in this proceeding to set aside, invalidate, or nullify either the contract evidenced by the notes or the contract out of which the notes arose. That this counterclaim did not, in the language of the statute, arise out of the contract or transaction set forth in the complaint, is too plain for argument; whether it is "connected with the subject of the action" is a question which we resolve in favor of plaintiff below. The question is often difficult, but, as was said in Carpenter v. Manhattan, etc., Co., 93 N. Y. 556, "the counterclaim must have such relation to and connection with the subject of the action that it will be just and equitable that" the controversy be settled in one action. If a more rigid or formal test be looked for, the best is that of reciprocity. Adams v. Schwartz, 137 App. Div. 235, 122 N. Y. Supp. 41, and cases cited.

Making application of this test, could the payees of the notes, when sued in deceit, set up the notes as a proper counterclaim? Certainly not. The action of the lower court in dismissing the counterclaim on the merits naturally followed from its disposition of the action of deceit; the writ of error herein complained of what was done. We sustain the writ only in so far as the counterclaim was dismissed on the merits, modifying the judgment below by striking out those words. The judgment is otherwise affirmed.

LEARNED HAND, District Judge (dissenting). I think the judgment on the notes should be reversed, along with the judgment on the counterclaim, and that both should go back for the new trial.