## BENTEL v. UNITED STATES.
## AMOS v. SAME.

(Circuit Court of Appeals, Second Circuit. June 17, 1926.)

No. 396.

**1. Post office ⬤⇒49.**

Evidence *held* to sustain conviction of each of two defendants under Criminal Code, § 215 (Comp. St. § 10385), for use of mails in furtherance of scheme to defraud in sale of corporate stock.

**2. Criminal law ⬤⇒1159(2).**

Appellate court is without power to do more than say whether or not there was evidence to go to jury.

**3. Fraud ⬤⇒13(3).**

Reckless statement of fact of which relator is ignorant may be equivalent civilly to statement of that which he knows to be false.

**4. Post office ⬤⇒35—Rules as to knowledge of falsity of representations as respects civil liability apply under criminal statute (Criminal Code, § 215 [Comp. St. § 10385]).**

The rules as to knowledge of falsity of representations affecting civil responsibility continue to apply when acts giving rise to civil responsibility become by statute, such as Criminal Code, § 215 (Comp. St. § 10385), a criminal offense.

**5. Criminal law ⬤⇒568.**

When an intent or state of mind is a necessary ingredient of offense charged, it must be averred and proved beyond reasonable doubt.

**6. Criminal law ⬤⇒312—Special situation and continuity of conduct may warrant inference of knowledge of falsity of statements made, if essential to offense.**

When state of mind essential to offense is a knowledge of false statements, the actor's special situation and continuity of conduct may warrant the inference that he knew the untruth of such statements, though mere fact of falsity does not allow inference of knowledge thereof.

**7. Post office ⬤⇒49—Evidence of defendant's position as sales manager and actions in promoting sales of stock held to reasonably warrant inference of necessary scienter (Criminal Code, § 215 [Comp. St. § 10385]).**

In prosecution, under Criminal Code, § 215 (Comp. St. § 10385), for use of mails in fur-

therance of scheme to defraud in sale of corporate stock, evidence that defendant was sales manager of enterprise, was successful in making sales, using extravagant statements taken from prospectus prepared by others, held, as a matter of law, that kind of evidence from which jury might reasonably infer knowledge of falsity of representations necessary to sustain conviction.

**8. Post office ⬤50—In prosecution for use of mails to defraud by sale of corporate stock, defense that defendant believed, and had reasonable cause to believe, statements made held for jury (Criminal Code, § 215 [Comp. St. § 10385]).**

In prosecution, under Criminal Code, § 215 (Comp. St. § 10385), for use of mails in furtherance of scheme to defraud by sale of corporate stock, defense that accused honestly believed, and had reasonable grounds to believe, statements put forth by others and used by him, held for jury.

In Error to the District Court of the United States for the Southern District of New York.

George R. Bentel and William C. Amos, with others, were convicted of using mails in furtherance of a scheme to defraud, and those named separately bring error. Affirmed.

These plaintiffs in error, with two others, were convicted as guilty of using the mails in a scheme to defraud (Criminal Code, § 215 [Comp. St. § 10385]). One took no writ, and one (Leven) has abandoned his.

Indictment charge is that Bentel, Amos, and the rest devised a scheme to defraud the persons to whom the indictment letters were sent, and "all persons whom the defendants could induce to purchase the stock of the Morosco Holding Company, Inc."

This company was formed to take over and operate property of one Morosco, a well-known producer of theatrical entertainments. He received the stock of the new corporation, or most of it, and the defendants in divers capacities put the stock on the market by most of the means that have been described in reports of cases like this one.

There were statements or prospectuses printed and distributed, personal letters written, and possible purchasers interviewed, all for the purpose of inducing such of the public as could be reached to believe (as charged) that the new company owned an amazingly valuable tract of land in or near Los Angeles, Cal.; that the book value of the preferred stock was $570 a share, though the prospective purchaser was offered one share of preferred plus four of common for not over $250; that the corporation had a *contract* with a named concern for taking at least four moving pictures per year at about $150,000

per picture, thus insuring large annual earnings, irrespective of other sources of income.

The indictment goes into more particulars, and the proof into a multitude. It is enough now to say that there was ample evidence for the jury that the prospectus and letter statements were substantially all false, and that the Morosco Company was a bubble blown with falsehood, and punctured as soon as it became impossible by selling stock and borrowing money to keep on paying unearned and illegal dividends.

David V. Cahill, of New York City, for plaintiff in error Bentel.

Gallert, Hilborn & Raphael and David J. Gallert, all of New York City, for plaintiff in error Amos.

Emory R. Buckner, U. S. Atty., of New York City (Frederic R. Coudert and David P. Seigel, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Of the writ taken by Bentel it is almost enough to say that we think it wholly without merit.

There are assignments of error relating to the admission of evidence, concerning which we think the matters complained of were either discretionary with the trial judge, or illustrate the common complaint of counsel who start an inquiry and feel hurt when opponents pursue the matter to the disadvantage of him that started it.

[1] It is also said to require a new trial that the prosecutor summed up in too forcible, if not a virulent, manner. We see nothing to complain of, except matters of taste, not errors of law. On the main proposition for Bentel, that there was no substantial evidence of his guilt to go to the jury, we must entirely disagree. It was admitted that Bentel was, if not a deviser, a most prominent forwarder, of the scheme for capitalizing Morosco. He promised to be the "watchdog of the treasury," and "watch Leven," with whom he joined hands to defraud the public by misrepresenting what Morosco had, and defraud the latter by withholding what Morosco Company was expected to yield to Morosco.

We perceive no legal question that will be made clearer by discussing the sordid details of evidence. The judgment as to Bentel is affirmed.

Amos is in a different and interesting category. He was never a principal, and he

had no part in devising the original advertisements or prospectuses, which contained most of the falsehoods mentioned in the indictment.

He was primarily a salesman, and for a while the sales manager, a position which brought him into intimate business relations with Bentel and Leven. He was, further, a prized salesman, and apparently a most successful one, for, while others had to be content with 15 to 20 per cent. commission, Amos received at least 25 and possibly 30 per cent. The argument on his behalf is this: Amos as an employee sent out circulars and prospectuses as true statements made by his superiors, who never revealed the truth to him, and he was justified in relying on those superiors' statements.

[2] Obviously this argument is, in the main, matter for a jury. We are without power to do more than say whether or not there was evidence to go to the jury, and that, in this case, is equivalent to declaring the rule as to proof of scienter in respect of one who does not form, but as a servant assists in forwarding a scheme to defraud.

A scheme, under section 215, is usually, as in this instance, a method of obtaining money under false pretenses; it is in common speech a cheat by means of lies. But a stock-selling swindle like this was not an indictable cheat at common law; for "when one injured another by a falsehood, the common law said the neighbor should not have believed him"; wherefore the government permitted a private suit, but denied a criminal prosecution. Bishop, Cr. Law (Ed. 1892) vol. 2, § 582. Cf. Rex v. Wheatley, 2 Burr. 1125, per Mansfield, C. J. This was a theory of human responsibility suitable for a simple, if not a rude, state of society, and by statute for more than a century the Legislature has been making crimes of representations which would at common law only have supported an action for deceit, if even that were possible. Section 215, Criminal Code, is emphatically a statute of that kind.

But during the same time that statutory criminal responsibility for cheats has been growing, the civil responsibility for false pretense and fraudulent representation has received much study. It is now plain that one is more or less firmly held to knowledge of falsity by the circumstances under which he states that as true which is in fact false. Thus a man is supposed and required to know matters pertaining to his own business, and one who makes representations, not knowing whether they be true or false, cannot be regarded as innocent, for a positive assertion of fact is by plain implication an assertion of knowledge concerning the fact asserted. Bigelow on Fraud, p. 57, citing cases. And see Angus v. Clifford, [1891] 2 Ch. 449.

[3] The matter is summed up by Lord Cairns in saying that a reckless statement of a fact of which the narrator is ignorant may be equivalent civilly to a statement of that which he knows to be false. Reese River, etc., Co. v. Smith, L. R. 4 H. L. 64.

[4] The measure or rule for what is evidence of the ultimate fact does not change in moving from the civil to the criminal side of the court; only the necessary quantum of probative force changes, and the just cited rules as to knowledge of falsity are applied, when what was once but a civil responsibility becomes by statute a criminal offense. See Wharton, Cr. Law (11th Ed.) §§ 1429, 1452, 1492, 1510, and cases cited.

[5, 6] It always remains true that, when an intent or state of mind is a necessary ingredient of the offense charged, it must be averred and proved beyond a reasonable doubt; but it is just as true that, when that state of mind is a knowledge of false statements, while there is no allowable inference of knowledge from the mere fact of falsity, there are many cases where from the actor's special situation and continuity of conduct an inference that he *did* know the untruth of what he said or wrote may legitimately be drawn.

This is such a case. The evidence trailed Amos through months of time and many places into talk or writing with many persons whom he induced to buy stock of the Morosco Company. It was amply proven that he told most, if not all, of the falsehoods of the prospectus, and added some equally false statements, apparently devised by himself. The tales he told or wrote were the same sort of positive untruths as the prospectus contained, all calculated to persuade a gullible public that what was sold by him at prices varying with the victim's readiness to pay would yield a return beyond most dreams of avarice. And this was his business, at 25 per cent. or so to himself on every sale made. He was not a humble servant; he had opportunity as sales manager for a time to learn the truth; he was at headquarters, and the sort of statements made, whether taken from the company's "literature" or devised seemingly by himself, were of a kind that any man with a fair business sense of probabilities would have thought required much corroboration. And all was wholly without denial, for Amos offered no denials; he did not testify.

[7] We hold as matter of law that from this *kind* of evidence the jury could reasonably infer the necessary scienter, and that the quantum thereof was sufficient for their consideration.

[8] The defense that one accused under this statute honestly believed, or had reasonable grounds to believe, the statements put forth, is for the jury. Rudd v. United States, 173 F. 912, 97 C. C. A. 462; Horn v. United States, 182 F. 721, 105 C. C. A. 163.

Judgment affirmed as to Amos, and by default as to Leven.