## TAYLOR v. BURR PRINTING CO.

Circuit Court of Appeals, Second Circuit.
May 14, 1928.

No. 256.

1. Contracts ⊜⟞53, 93(1)—Inadequacy as consideration of want advertisements plan or inattentiveness of defendants held not ground for annulment.

Defendants contracting to pay plaintiff certain sum in consideration of delivery of printed plan for securing classified want advertisements are not entitled to annulment of contract because plan was not an adequate consideration for contract, nor because they were inattentive to its terms, or did not properly examine it.

2. Contracts ⊜⟞94(2)—Plaintiff's false representation that he was still publisher of paper held to justify defendants' repudiating contract to pay for want advertisements plan.

Where defendants contracted to pay plaintiff certain percentage of gross revenue for plan for securing classified want advertisements, plaintiff's false representation that he was still the publisher of a paper, and that plan was used

by such paper, was a relevant statement of existing fact, justifying defendants in repudiating the contract.

**3. Contracts ⊜═266(2)—Defendants held not barred from annulling, for fraud, contract for want advertisements plan because not returning plan to plaintiff.**

Defendants, contracting to pay plaintiff certain sum for printed plan for securing classified want advertisements, were not barred from annulling contract on discovering false representations by plaintiff because not returning the copy of the plan received, since all that plaintiff could demand is that defendant should not disclose its contents, and, if it be still in existence, deliver it to plaintiff.

**4. Sales ⊜═38(2)—Buyer may rescind if seller's false statement of existing fact induced buyer's acceptance, without proving seller's guilty knowledge.**

When a seller makes a false statement of some existent fact as an inducement to the buyer's acceptance, the buyer may rescind without proving the seller's guilty knowledge.

**5. Contracts ⊜═94(I)—Defendants held entitled to annulment of contract to pay for want advertisements plan because of plaintiff's misrepresentation that plan had made certain paper supreme.**

Misrepresentation by plaintiff, suing for accounting upon contract, whereby defendant agreed to pay plaintiff certain sum in consideration of delivery of printed plan for securing classified want advertisements, that plan had been a success in a newspaper of which plaintiff had been publisher, and had made such paper the supreme paper of the city, *held* to have been made by plaintiff with an utter indifference to truth, entitling defendant to annul contract.

Appeal from the District Court of the United States for the District of Connecticut.

Suit by Thomas D. Taylor against the Burr Printing Company. Decree for defendant, and plaintiff appeals. Modified, and affirmed.

The bill was for an accounting upon a contract under which the defendant, a newspaper publisher, in consideration of the delivery to it of a printed plan for securing classified want advertisements, agreed to pay to the plaintiff 10 per cent. of its gross revenue from such advertisements for a period of 10 years. The contract was executed on October 4, 1920, by a vice president of the defendant, and was repudiated within a few days on the ground, among others, of misrepresentations made in procuring its execution.

The plaintiff—who was the originator of the plan, which he carefully kept secret—between November, 1915, and the spring of 1917, had been the publisher and manager of the Evening Telegraph, a Philadelphia newspaper, upon which in March, 1916, he put in-

to operation the plan which he later sold to the defendant. There was a dispute as to whether this had ever worked to the advantage of the paper, but at the end of little more than a year after it was first used the plaintiff was forced out as publisher, and relegated to a subordinate position, and the plan was abandoned. His salary was paid until June 24, 1918, shortly after which the paper was sold to the Philadelphia Public Ledger and disappeared.

On October 4, 1920, over two years after the extinction of the Telegraph, the plaintiff appeared at the offices of the defendant at Hartford, Conn., after some preparatory correspondence in August. He had an extended interview with two of its officers, and obtained their signatures upon the contract in question, the consideration for which on his side was the delivery of a copy of the plan, with some ancillary forms, coupled with covenants to advise with the defendant by mail in its use, and not to give it to any other paper in Hartford. The witnesses for the defendant swore that at this interview the plaintiff used a card of introduction on which his name appeared as publisher of the Telegraph, and that he gave them to understand that the plan was still in successful use, and had made it the "supreme" paper of the city in this kind of advertising. The plaintiff and his son (whose presence at the interview was however disputed) agree that he spoke of the success of the plan when in use by the Telegraph, but denied that he used such a card, or that he gave the defendant to suppose that the plan was still in operation.

The learned judge found that the plaintiff represented that he was then the publisher of the paper, that the plan had made it "supreme" in Philadelphia, that the defendant had relied upon these representations as inducements to enter into the contract, and that they were false. He also held that the plan was not an adequate consideration for the contract, as it was unintelligible and would not do what the plaintiff claimed for it.

William E. Holloway, of New York City, and Albert Smith Faught, of Philadelphia, Pa., for appellant.

Robinson, Robinson & Cole, Edward W. Broder, and John C. Blackall, all of Hartford, Conn., for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1] We cannot agree with the learned judge in substituting for the judgment of the defendant his own estimate

of the value of the plan. Assuming that Chamberlin and Linton, the defendant's representatives, had opportunity to examine it to their satisfaction on October 4, 1920, and that Taylor did not misstate its contents, their acceptance was final, and forbids a court to appraise its value by any standards of its own. These men were not children, but seasoned in their business, and, if they chose to enter into an improvident contract, any resulting loss is as much to the account of their principal as in any other case. If they allowed themselves to be beguiled by Taylor's praise of his work and his salesman's talk, they have only themselves to thank for their failure to use more circumspection in important affairs. It is no excuse, either that they were inattentive to the terms of the contract, or that they did not properly examine what they bought.

[2] However, if to their carelessness the plaintiff added misrepresentation, the result is, of course, quite different. The District Judge has found that Taylor falsely represented, that he was still the publisher of the Telegraph, and from this, of course, it follows that it was still being published. While this finding is upon disputed facts, we should have no warrant to disturb it upon a record like that before us. Unless the card was stolen (and, indeed, Taylor did not hesitate to charge that it was), it gave the strongest corroboration to the defendant's version and almost demonstrated its truth. It is quite true that, taken alone, it would not be enough to upset the contract that Taylor had had recourse to such a deceit only to gain an interview with Chamberlin and Linton. The ruse by which he effected an entrance, if it stopped when he got in, was not important; it must have been an inducement to the acceptance of the bargain. But it did not stop there; at least, Chamberlin and Linton said that it did not; and there is no reason to question their word after the judge has accepted it. His talk was throughout based upon the assumption that he was then the publisher, and that the plan was still in operation. This was inevitably so, for otherwise his initial trick would have been exposed.

Even if all he said about the success of the plan had been true, it was a material deceit to put it in the present, rather than in the past, where it belonged. Had he told the truth, some inquiry would almost certainly have been made as to why it had not been continued, which would have forced him either into further falsehood, or would have disclosed a situation that might have failed his purposes. At any rate, having undertaken to speak at all, he was bound to give his hearers the facts as they were and to leave it to them to determine whether an experiment then three years old, terminating in the extinction of the paper, would be a satisfactory demonstration of the merit of his wares. He might not deprive them of that opportunity, and insist that it could have made no difference in their ultimate decision; they had the right to the truth, if he meant to use the incident at all.

[3] This, therefore, was a relevant misstatement of existing fact, which, when discovered, justified the defendant's timely repudiation of the contract. The point is raised that the defendant did not return the copy received, but it can hardly be supposed that this particular paper was of any importance to the plaintiff. It was not a unique document, without which he could make no other sales. All that he may at most demand is that the defendant should not pass it on to others, or disclose its contents, and that, if it be still in existence, it be delivered over as a condition of annulment. The judge's first finding alone is therefore enough to sustain the decree below, and we might rest upon it; but we think that the second is an equally good ground for the same result.

The plaintiff's declaration that the plan had made the Telegraph "supreme" in Philadelphia was amply disproved in fact by the testimony of Kirkman, Kelly, Nevin, and Johnson, all apparently disinterested witnesses, whom only the plaintiff and his son contradicted. These witnesses had had personal acquaintance with the Telegraph during the period in question, and said that, instead of being a source of strength to the paper, the plan had greatly embarrassed its affairs. While, when first put into use, it resulted in an enormous increase in advertisements of the kind in question, these soon ran beyond the period when they represented genuine offers and their continuance brought buyers when there was nothing to buy. The paper was thus stuffed with what amounted to false advertisements and lost caste with the public. We need not pass upon the truth of these conclusions; it is enough that the witnesses, who were adepts in the business, concluded that the plan was for these reasons an injury to the paper, and chose to abandon it and the plaintiff. So much was proved by a great preponderance of reliable evidence.

[4] Whether the plaintiff's declaration to the contrary three years later was a fraud does indeed depend upon something more. Had this been a statement of some existing "fact," no scienter would have been necessary; this not being an action on the case for deceit, but

a suit in equity to rescind. In spite of the dictum to the contrary in So. Development Co. v. Silva, 125 U. S. 247, 250, 8 S. Ct. 881, 31 L. Ed. 678, we think it settled law that when a seller makes such a declaration as an inducement to the buyer's acceptance, the buyer may rescind without proving the seller's guilty knowledge. Smith v. Richards, 13 Pet. 26, 10 L. Ed. 42; Turner v. Ward, 154 U. S. 618, 14 S. Ct. 1179, 23 L. Ed. 391; Independent Harvester v. Tinsman, 253 F. 935 (C. C. A. 7); In re American Knit Goods Mfg. Co., 173 F. 480 (C. C. A. 2); Williston, § 1500. In a sense any assertion is a statement of fact even though it be only an opinion. It involves at least, as has often been pointed out, the belief of the utterer in the truth of what he says, Vulcan Metals Co. v. Simmons, 248 F. 853 (C. C. A. 2); and, unless it be such as no one could suppose the hearer would act upon, it may give ground for relief. The distinction depends upon how far the utterance implicitly presupposes the use of some subjective standard by the utterer. Value, quality, fitness, success, are usually understood as meaning no more than that the objects conform with the declarant's individual yardstick in such matters. While he may make it clear that his reference is to some commonly accepted measure, ordinarily he does not, and his hearer takes it for more at his peril.

[5] Utterances such as those now at bar are in this class. What one man would call a success another might not; there is no certain objective standard to which reference is impliedly made. We think, therefore, that it was not enough to show that nobody could reasonably have thought that the plan had been successful, or had made the Telegraph "supreme," if the plaintiff actually thought otherwise. Whether he did touches his own belief, and must always, except in extreme cases, rest in inference. Here we find it very hard to suppose that any one could truly suppose that the plan had done what the plaintiff said. We do not forget that during the months of January and February, 1917, the paper for the first time had shown a profit, though this was in part accounted for by extraordinary payments made just then; nor do we underestimate the natural bias which an inventor has towards his discovery. Perhaps, if his conduct had been all aboveboard, we should feel bound to give him the benefit of the doubt, even though the sequence upon the successful months proved so disappointing, but his concealment of the full facts touching this very matter, when he did undertake to disclose, seems to us to forbid so charitable an interpretation. Moreover, in every case but one in which his earlier efforts with other papers have been disclosed, his plan was shown to have been a failure. That one, a paper in Springfield, Mo., was successful, if the single witness is to be believed; but in Providence, Atlanta, and Minneapolis those papers which tried the plan found it useless and threw it up. It is true that he had since then revised it, and had secured other purchasers in the summer of 1920; but these ventures had not yet been proved, and their success still rested in supposition.

At least we can say, and we hold, that, in the face of such experience as he had had up to that time, nothing but an utter indifference to truth could have warranted his saying that the plan had been a success in the Telegraph, or had made "supreme" a paper which was sold out for the value of its press franchise. Therefore we hold that the defendant has made out its case upon this misrepresentation, as well as upon the undoubted one that the paper still continued to use the plan with him as its publisher.

It results that the decree must be affirmed. If the plaintiff wishes, in order to protect his rights and to secure him his share in the rescission, the decree may perpetually enjoin the defendant from disclosing any part of the plan, and direct it to return the copy which it received, if still in existence, or to insure against its use by others.

Decree, as so modified, affirmed.