**UNITED STATES of America, Plaintiff,**

**v.**

**Frederick EWING, Defendant.**

**No. 94 CR 359–1.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 17, 1994.

Julia Getzels, Sean B. Martin, U.S. Attys. Office, Chicago, IL, for plaintiff.

---

David Duggan, Chicago, IL, for defendant.

## MEMORANDUM OPINION
## AND ORDER

ZAGEL, District Judge.

The United States charges a conspiracy by Frederick Ewing and others lasting from 1983 through 1991. Ewing worked for the University of Chicago Hospitals and hired contractors to perform work on the hospital's physical plant. It is alleged that he took money, gifts and property from contractors in return for awarding work orders and contracts. The indictment says that "with respect to conduct occurring after November 18, 1988, it was further part of the scheme that [defendants] deprived UCH of Ewing's honest services." The reason for the date is that after November 18, 1988 one could be prosecuted for depriving an entity of "honest services" and, before then, one could not.

█ Ewing says that the indictment is bad because it does not "distinguish between (1) when Ewing was depriving UCH of his own honest services, and (2) when he was obtaining money and property by false pretenses." So, he argues, the indictment charges him with conduct that was not illegal under the mail fraud statute until November 1988. This violates the ex post facto clause.

Ewing's argument is based on equivocation, reading "charge" to have only one meaning: a formal request for legal punishment. A "charge," the noun, is a formal invocation of a specific criminal statute calling for a sentence to be imposed on a particular person. But "charge" is also a verb roughly equivalent to the word "says" or "alleges" when used in an indictment. In this case the indictment "says" that Ewing, with criminal intent, obtained money and property and deprived another of the intangible right to his honest services by means of fraud. In this case the indictment levies a "charge" that invokes a criminal statute and its sanction for defrauding another of the

right to Ewing's honest services from November 19, 1988 through 1991. It also levies a "charge" of seeking sanction for defrauding another of money and property from 1983 through 1991.

There is no violation of ex post facto rules. *United States v. Dempsey*, 768 F.Supp. 1256, 1267–68 (N.D.Ill.1990).

█ The other strain to Ewing's argument is the risk of confusion to a jury which might misread the indictment the same way Ewing does, and decide that Ewing is guilty of what the indictment "says", and not of the "charges" in the indictment. This risk is ordinarily eliminated by instructions to the jury on the charges and their elements. Moreover, the role of the concept of "deprivation of honest services" may not be important in this or other mail fraud cases. Where a buyer of goods and services sets out on a kickback scheme, the simple purpose is profit. I doubt one in a million has the single goal of depriving an employer of the buyer's honest services. The faithless buyer is morally like a burglar who enters a house to steal whatever presents itself. The burglar may take something of no value to the owner or something that is so overinsured that its loss is a net gain to the victim. There is little problem in prosecuting a burglar who leaves a victim better off, a tangible piece of property was taken, and the definition of burglary is satisfied, even under the very old common law crime of trespass *de bonis asportatis*. At common law one could not steal intangible property like negotiable paper. *R. v. Powell*, 169 Eng.Rep. 557 (1852). Modern statutes changed all that. *E.g.* Model Penal Code Art. 223. But the faithless buyer who deals only with the lowest qualified bidder or, where prices are standard, with only the best suppliers of goods and services, takes nothing tangible from the employer. And even where this is not the case, it may be impossible to prove it is not the case.[1] Congress (filling a gap left by *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987)) decid-

---

1. "A man is none the less cheated out of his property, when he is induced to part with it by fraud, because he gets a quid pro quo of equal value. It may be impossible to measure his loss by the gross scales available to a court, but he

has suffered a wrong; he has lost his chance to bargain with the facts before him. That is the evil against which the statute [18 U.S.C. § 338] is directed." *United States v. Rowe*, 56 F.2d 747, 749 (2nd Cir.1932) (L. Hand, J.)

ed that such proof was pointless and that an intangible right to honest services was a good protected from theft just as states and common law judges decided property worthless to its owner was protected from theft.

These policies are not implicated in every case. Most property taken by burglars is not worthless. Often it can be proved that the faithless buyer did cause the employer a tangible loss. The suppliers who pay kickbacks may well testify that they would have charged the employer less or provided more material or better work if they had not had to pay kickbacks. If a jury finds that the suppliers are telling the truth, they need not bother themselves with the subtler (but not very subtle) point of deprivation of intangible rights.

The question of intangible rights may never really be presented in the case. If it is, a jury can be carefully instructed to answer it as the law and the facts dictate. The motion to dismiss the indictment is denied.

All that remains is the motion for a more definite statement of facts as to what "money and property" Ewing is claimed to have received. Discovery in this case should answer this question. If it does not, Ewing may renew his motion which I now deny.