## UNITED STATES *v.* STAPLES.

*(District Court, W. D. Michigan, S. D.* December 2, 1890.)

**1. USING MAILS TO DEFRAUD—EVIDENCE.**
An indictment under Rev. St. U. S. § 5480, for using the mails with the intent to defraud, charged that defendant sent circulars through the mails, stating that he had a certain kind of seed wheat which he would furnish at a certain price per bushel, and that, in accordance with a previously formed intention to defraud every one sending him money, he kept the money sent by various persons to purchase such wheat, and sent them no wheat whatever. *Held* that, in order to convict, it must be shown that defendant intended to defraud every person sending him money during the time alleged.

**2. SAME.**
The second count of the indictment charged that defendant, in furtherance of a scheme to defraud the public, sent circulars through the mails, stating that he had blueberry plants to sell; and that he intended giving no plants of any value for the money received. The evidence tended to show that defendant shipped wild huckleberry plants, which he gathered in the woods, while his advertisement described what would be understood as a cultivated plant, and conveyed the idea that he was engaged in its culture. It also appeared that many of the plants had been set out by purchasers, but failed to live. *Held*, that the jury should consider whether it was represented by the circular that defendant had a place where he grew the plants, or had the means of procuring them, or whether it was implied that they were wild plants, or were such as were raised by people in the business.

**3. SAME.**
The jury may also consider whether it was defendant's practice to transact business with people at a long distance, and, if they find that fact, may consider it as a circumstance in the case.

**4. SAME—EXAGGERATING VALUE OF GOODS.**
The practice of exaggerating the value of goods offered for sale is not criminal if restricted within reasonable bounds, and is not done with fraudulent intent.

**5. SAME—DEFRAUDING NEWSPAPERS.**
One who, through the mails, induces newspaper publishers to insert advertisements in their papers on a promise to pay the bills therefor when rendered, if he has no intention of so doing, is guilty of using the mails for the purpose of defrauding.

**6. SAME.**
In such case the jury may consider the fact that defendant failed to reply to the letters of such publishers, requesting payment of their bills.

At Law.

Defendant was indicted for carrying on, through the mails, various schemes to defraud, in violation of section 5480, Rev. St. The indictment set forth three distinct schemes and offenses. The first count charged defendant with advertising in divers newspapers throughout the United States and by means of circulars sent through the mails, that he had for sale a certain high grade of wheat, which he would furnish for a certain price per bushel; that he was sent various sums of money by different persons, but, in accordance with a previously formed intention to defraud every one sending him money, he appropriated the money without sending any wheat whatever. The second count charged like extensive advertising of "blueberry" plants, and that defendant intended giving no plants of any value for the money received. The third count charged defendant with inducing divers newspaper publishers throughout the United States to publish his various advertisements, intending never to compensate them therefor. Each count charged the mailing of particular letters in executing the respective schemes to defraud. The evidence adduced in connection with the first count tended to show that in particular instances occurring during the period set up in the indict-

ment defendant sent no wheat whatever for money sent him, but that prior thereto he had made shipments of wheat for money sent him. As to the second count, the evidence showed that defendant shipped the common wild huckleberry, which he gathered in the woods, while his advertisement described what would be understood as a cultivated plant, and carried the idea that he was engaged in its culture; that many hundreds of these huckleberry plants were set out and cared for by purchasers, and entirely failed to live. In support of the third count the government proved several particular instances where defendant had by letter solicited the insertion of his advertisements, agreeing to pay therefor on rendition of bill; that he had failed to keep his agreement, and neglected to answer letters addressed to him in regard thereto. Defendant was convicted upon the second and third counts and acquitted upon the first count.

L. G. Palmer, U. S. Atty., and F. W. Stevens, Asst. U. S. Atty.
Fred A. Maynard, for defendant.

SEVERENS, J., (charging jury.) The indictment in this case consists of three counts, charging three separate and distinct offenses; and it is competent, in such a case, for a jury, if they find any of the counts proven beyond a reasonable doubt, to find the accused person guilty upon such count, naming it; and, if they find the respondent to be not guilty upon other counts, to render a verdict accordingly. The verdict must respond to all the issues in the case; and it may happen in any such case that one count may be established by evidence and others not. In such a case, the verdict must indicate what the fact, as found by the jury, is. In the present case, the first count in the indictment charges substantially, laying aside all mere verbiage, that the defendant, having formed a scheme to defraud, used the United States mail facilities for the purpose of carrying that scheme into effect. In substance that is the nature of the charge made in the first count. The particular plan or scheme that it is alleged in this count of the indictment he formed, and in pursuance of which he employed the United States mails, was to represent to the public that he had for sale, and would sell to them, a grade of wheat known as "Everett's High Grade Wheat," and that the scheme or plan that he formed was to draw the public in by means of the use of the mails to send to him sums of money, for which he would send to them, in quantities according with the prices named, this seed wheat, known as "Everett's High Grade Wheat." In that count it is charged that his scheme or purpose or plan was to defraud any and all persons who should apply to him for this seed wheat of their money. Now, I wish the jury to understand in what way this purpose or intention to defraud enters into a charge of such a character as this, in an indictment which is subject to trial in the United States courts. We do not have jurisdiction here, and cannot try the criminal charge ordinarily known as obtaining property by false pretenses. We have no authority to try any such matters as this. Those come within the jurisdiction of common-law offenses. But, incidentally, that matter becomes involved in the inquiry here. The gist of the offense which we have to try is the

using of the mails of the United States for an unlawful purpose; that is, for the purpose of carrying into effect a scheme to defraud. A scheme to defraud, carried out by other means than the United States mails, would be subject to the cognizance of the state courts; but the federal courts have jurisdiction only where the mails are being used for the purpose of carrying it out, and it is the use of the mails in the furtherance of an unlawful purpose that becomes the offense of which we take cognizance. Incidentally we have to inquire whether the scheme itself was fraudulent, although it is not the specific offense which we are to try. It is necessary for the government, upon this first count in the indictment, to show that the respondent formed in his mind a purpose, a plan, a scheme, to defraud the public with whom he should come into communication, each and every one, by means of the execution of his scheme, by not furnishing the wheat according to the promises held out in his prospectus or circular, upon receipt of the proper sum therefor from his several customers. It might have been sufficient to have alleged, if the case were a proper one to come within the law, that the respondent formed a purpose of defrauding some of the persons with whom he should come into communication; but the indictment alleges that the intent was to defraud everybody, substantially, with whom he should come into communication through the mails of the United States, by not furnishing them with the wheat he promised in his circular that he would furnish. Now, upon this first count, in order to convict the respondent, it is necessary for the government to have established by the proof beyond all reasonable doubt that the respondent formed this purpose to defraud everybody who should come into communication with him through the mails out of their money by not sending them the wheat he represented he would send during the time covered by this count in the indictment,—a period of six months in 1889. No question is raised, as the court understands it, but that the mails were employed for the purpose of furthering the business of the defendant; so that the pith of the inquiry is: Did he form this preconceived purpose before he employed the mail to get these orders? Did this preconceived purpose form the basis of his operations during those six months? Did he intend not to furnish this seed wheat to anybody that should send him money therefor?

The second count in the indictment is one which relates to using the mails in furtherance of a scheme to defraud by getting customers to buy his blueberry plants; and it charges that the defendant formed a purpose to defraud the public by representing that he had blueberry plants to sell, and would sell them upon receipt of the proper sum. Here, again, it is not controverted, as the court understands, that the respondent used the mails in promoting his purpose; so the question you have to deal with is whether, in sending out these circulars, and making these representations to the public, he intended to deceive and defraud it out of its money. Upon this subject, you are entitled, and ought, to take into consideration the nature of the article which he confesses to have supplied in response to these applications by customers. You will consider whether or not it was not represented by that circular, substantially, that he had a business, or a place where he grew these plants, or that

he had the means of procuring them from some place where they were grown. Was it implied that these plants might be wild plants taken up from the fields? Was it to be inferred from that circular that his promise would be filled by any such article as that, or was it not implied that these plants were such as were raised by people in the business, and would be of fitness for growth, planting, and cultivation, and as fairly likely to meet the expectations of the public? Upon this head, as upon the others, you may take into consideration the proof in regard to the manner in which he did business at Portland; and if you find from the evidence that his practice was to carry on the business at arms-length, —that is, with people at a long distance,—you may make such inferences as you think you are entitled to from that circumstance. Now, gentlemen, you are familiar, as the public generally are, with the fact that seedsmen and nurserymen, as well as all other parties who have anything to sell, have the habit of puffing their wares, and we are all familiar with the fact that it is a very prevalent thing in the course of business to exaggerate the merits of goods people have to sell; and within any proper reasonable bounds such a practice is not criminal. It must amount to more substantial deception in order to be subject to cognizance by the courts. A certain degree of praise and commendation of one's goods in business is allowable; but when that is carried to the extent of obtaining the public's money by means of actually fraudulent representations, then it comes under the condemnation of the law. You will consider all of these charges without losing sight of this very prevalent practice, and in reference to this second subject,—that is, the sale of these blueberry plants, and the advertising of them,—you will see whether this is within the range of an ordinary and legitimate business, or whether it goes beyond those bounds, and is a downright deception.

The third count in the indictment charges, in substance, that the respondent formed a scheme to defraud, by sending circulars, advertisements, forms of advertisements, to various newspapers published throughout the United States, requesting them to publish these advertisements, send him a copy of the same, together with their bill, and that he would thereupon pay such bill, when he really did not have the intention to pay therefor. Now, as in the other cases, it is necessary for the government to prove that he formed that scheme. It does not prove the case to show that the man did not in fact pay some bills which he promised to pay. That does not make a case, because the non-payment may come from misfortune, inability to pay, or from oversight. It may come from any of the contingencies which affect such business. It may be a matter of some consideration to you, in passing upon this third count, to note, if it be so, that the respondent failed to respond to letters which were addressed to him in reference to the payment of his bills. You must be satisfied upon your consciences that before he sent out these advertisements and these letters he had formed a purpose of defrauding whoever should publish these circulars, out of the payment for such publishing. As I said, it is not a case coming within the scope of this statute if, sending these circulars without any purpose to defraud the publishers, he did afterwards defraud them. The point is,

did he form the scheme before he sent them out, to defraud them? Because there must have been in each of these a plan to defraud; and then, in pursuance of that previously formed plan, he must have carried it into execution by use of the mails. You will then inquire, from this testimony, whether it is shown beyond a reasonable doubt that he formed the preconceived purpose of getting these advertisements published, with the intention of not paying for them. The government is bound, upon this branch of the case,—this third count,—as upon all the others, to make the proof out in so cogent a way that no reasonable doubt is left in your minds that these facts existed: That he formed the purpose of defrauding, and used the mails in furtherance of this scheme; and this same proposition runs through each and every count in the indictment: In the first place, that he should have formed the scheme to defraud by sending the circulars of this wheat; in the second count, that he formed the purpose to defraud by sending out the circulars for those berries, knowing what they were, what he intended to fill the orders with; and, thirdly, that he formed the scheme of defrauding these publishers by not paying them after the publication should have been duly inserted. Now, gentlemen, if upon either of these counts you find this respondent to be guilty, you will so announce. If you find him guilty upon all, you so declare in a general way; if not guilty upon any, so announce in a general way; but, if guilty in some and not in others, then divide, and indicate on what you find him guilty, and on what not. Now, as I have had frequent occasion to say, and of which you are probably aware without my repeating it again, in every criminal case it is incumbent upon the prosecution to make out the facts that go to constitute the crime beyond a reasonable doubt; the proof must be reasonably clear, and leave no reasonable doubt in your minds. You must come to the conclusion unhesitatingly. If the proof satisfies you to this extent in this case, as to each or any or all of these counts, you will find accordingly. If, on the other hand, it does not reach that degree of certainty, or sureness, then you should acquit the respondent. Or if, upon any of them, you find the proof is not sufficiently cogent to warrant his conviction, then you will so declare.