**UNITED STATES v. SPIELBERGER et al.**

District Court, W. D. Virginia.

July 24, 1939.

Joseph H. Chitwood, U. S. Atty., of Roanoke, Va., Frank S. Tavenner, Jr., Asst. U. S. Atty., of Woodstock, Va., and Clifton A. Woodrum, Jr., Sp. Asst. to Atty. Gen., for the United States.

T. W. Messick, of Roanoke, Va., for V. P. Wilson.

DOBIE, District Judge.

In this case the indictment is in many counts, and the defendants are quite numerous. One of the defendants, V. P. Wilson, demurs to the Fifth Count of the indictment, which purports to set out against him a violation of the Mail Fraud Statute, 18 U.S.C.A. § 338.

This demurrer states that Count Five of the indictment fails to state sufficient facts to constitute the crime of which the defendant Wilson is charged. In support of the demurrer five grounds are assigned:

"1. That according to said indictment and Count Five thereof, it shows on its face that the report allegedly written and mailed by defendant was made and done after lapse and close of the sales campaign and not during or before same.

"2. That said Count Five on its face constitutes an information report to people interested as to status and condition of oil properties of the Trust, and no prediction, representation or assurance as to values or recovery.

"3. That said Count Five is wholly void of any allurements, enticements, or representations which might in any manner induce, entice or pursuade the reader thereof to purchase any of the alleged securities.

"4. That Count Five shows on its face that it could not have any effect in the furtherance or execution or aiding of any scheme or artifice to defraud.

"5. That Count Five positively negatives any representations designed to aid in deceiving or defrauding any person or unit holder."

The Mail Fraud Statute (18 U.S.C.A. § 338) in substance provides: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, * * * writing, circular, pamphlet, or advertizement, * * * to be sent or delivered by the post office establishment of the United States, or shall take or receive any such therefrom, * * * or shall knowingly cause to be delivered by mail according to the direction thereon, * * * shall be fined not more than $1,000, or imprisoned not more than five years, or both."

The First Count of the indictment in paragraphs 1 to 18, which are incorporat-

ed into the Fifth Count, charges that commencing on or about February 14, 1936, and continuously thereafter, up to and including August 20, 1937, the defendants in the sale of units of beneficial interest in the Cimarron Petroleum Trust devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises. The scheme and artifice and the specific misrepresentations employed are set forth in detail. Count Five of the indictment incorporates the allegations set out in these 18 paragraphs of the First Count which describe the entire scheme devised.

■ The Fifth Count then sets out in detail the report and letter signed by V. P. Wilson, allegedly sent out in furtherance of this scheme. Defendant Wilson demurs to this count apparently because it is the only one in which there is any precise and definite statement as to his direct participation in the alleged scheme. The 18 sections mentioned above merely describe him as attorney for the various corporate devices by which the business was carried on. Nowhere in the letter or report set forth in the Fifth Count, in the Fifth Count itself, or in the indictment, is there anything to support the contention that such letter or report was written after the close of the sales campaign of the units of beneficial interest in the Cimarron Petroleum Trust. The period of the scheme charged is from February 14, 1936, to August 20, 1937, and the use of the mails charged in the Fifth Count was on or about June 28, 1937, by the causing of the delivery by the mails of the letter dated June 25, 1937. The Fifth Count of the indictment thus upon its face charges the commission of the offense well within the period during which the indictment charges the devising of the scheme and artifice.

■ In Points 2, 3, 4, and 5 the demurrer attacks the Fifth Count of the indictment on the grounds that this count is upon its face informative only, is void of any allurements, enticements or representations which would induce the purchase of the units of beneficial interest, and negatives any representations designed to aid in deceiving or defrauding any person. Even a cursory reading of the letter or circular, set out in full in the Fifth Count, would disclose that it contains many statements well calculated to induce, pursuade, de-

ceive and defraud unit holders and other persons. A few of these may be cited. "Unit holders have received more than twice as much as the average stocks or bonds have paid during the past year, to-wit: 18%." "Pipe line runs for the next sixty days should fully and completely liquidate all current operating obligations against these properties and Trustees will then resume disbursements on a sound basis." "The Trustees have not received their fees of 5% of the net. In other words the Unit Holders have the full benefit of the earnings of the Trust." "Until about sixty days ago, operation of the Trust's properties was regular and quite satisfactory." And there are other statements as to the activities of the Trustees (past, present and future) and as to the operations (also past, present and future) in connection with various oil wells and oil leases of the Trust.

■ These statements would seem to go far beyond the minimum requirements set out by Mr. Justice Brewer in Durland v. United States, 1896, 161 U.S. 306, 315, 16 S.Ct. 508, 512, 40 L.Ed. 709: "We do not wish to be understood as intimating that, in order to constitute the offense, it must be shown that the letters so mailed were of a nature calculated to be effective in carrying out the fraudulent scheme. It is enough if, having devised a scheme to defraud, the defendant, with a view of executing it, deposits in the post office letters which he thinks may assist in carrying it into effect, although, in the judgment of the jury, they may be absolutely ineffective therefor." See also Morgan v. United States, 8 Cir., 1938, 98 F.2d 473; United States v. Wupperman, D.C., 1914, 215 F. 135.

■ Another and a very persuasive reason for overruling this demurrer is found in what is often called (in this connection) "the doctrine of lulling letters". This doctrine is clearly set forth in Preeman v. United States, 7 Cir., 1917, 244 F. 1, 9: "The scheme alleged being one for obtaining money through the fraudulent representations and practices set forth, the use of the mails, even after the money is received, for the purpose of assisting in retaining the money, or to convey to the victim assurances calculated to lull him into inaction and to postpone, perhaps indefinitely, his taking action in respect to his loss, is within the purview of the law which condemns depositing in or taking

from the mails any letter, etc., for the purpose of executing any scheme to defraud." And to the same effect, see Bogy v. United States, 6 Cir., 1938, 96 F.2d 734, 740; Lewis v. United States, 9 Cir., 1930, 38 F.2d 406, 416.

The cases cited by counsel for the defendant Wilson fail to sustain the contentions of the demurrer. In United States v. Post, D.C., 1902, 113 F. 852, the decision of District Judge Locke was clearly predicated upon a failure in the indictment to set out sufficiently the intent to defraud; in Stewart v. United States, 8 Cir., 1902, 119 F. 89, the letter was written after the fraudulent scheme had been fully consummated and after the victim had fully sustained all the loses which he could possibly sustain by reason of the fraudulent scheme, while further, the opinion did not discuss "the doctrine of lulling letters". As to United States v. Dale, D.C., 1915, 230 F. 750, much the same considerations are applicable as to the preceding case of Stewart v. United States; while in Stewart v. United States, 8 Cir., 1924, 300 F. 769, the demurrer was sustained only as to two of the letters in question which were held to be clearly in no wise concerned with the fraudulent scheme.

For the reasons set out above, the demurrer of the defendant, V. P. Wilson, to the Fifth Count of the indictment is hereby overruled.