### NASSAN v. UNITED STATES.

#### No. 4897.

Circuit Court of Appeals, Fourth Circuit.

March 10, 1942.

Simon E. Sobeloff, of Baltimore, Md. (Bernard B. Feikin and Wm. Taft Feldman, both of Baltimore, Md., on the brief), for appellant.

K. Thomas Everngam, Asst. U. S. Atty., of Baltimore, Md. (Bernard J. Flynn, U. S. Atty., of Baltimore, Md., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PER CURIAM.

This is an appeal by Harry J. Nassan, alias Henry Renfro, from a conviction and sentence on five of seven counts of an indictment, charging violation by him and six others of the Mail Fraud Statute, Section 215 of the Criminal Code, 18 U.S.C.A. § 338. Appellant was also convicted on the eighth count of the same indictment, charging a conspiracy to violate the Mail Fraud Statute, in contravention of Title 18, § 88, U.S.C.A. The only issue presented on this appeal is the legal sufficiency of the evidence to support a verdict by the jury of appellant's guilt. The use of the mails was admitted. We need concern ourselves only with the question of whether there was enough evidence to submit to the jury on the issue: was the scheme of the appellant fraudulent in the sense of that term as it is used in the federal statute.

Appellant was the promoter, organizer and owner of an unincorporated concern known as the American Refunding Company, which dealt in warehouse receipts for whiskey. The modus operandi of this self-styled beneficent enterprise followed a fairly consistent pattern. Appellant and his business associates would attempt to induce people who had bought stocks and other securities which were not paying dividends or interest to "refund their losses" by trading their securities for whiskey warehouse receipts. The allegations and representations of appellant which resulted in a trade agreement with disillusioned investors were varied according to the gullibility of the investing neophyte. Usually the victims of appellant were persons with very slender knowledge of either business methods or the precise nature and legal attributes of whiskey warehouse receipts.

There is evidence in the record showing that sometimes the salesmen of the American Refunding Company stated that they were representatives of the United States Government, or were working for "Uncle Sam", or that they were selling United States Government Securities on which fabulous profits had been made and could still easily be made; that the whiskey receipts were United States Government Liquor Certificates and were as secure as United States currency or a "dollar bill". Some of the investors even thought they would receive cash as a result of the refunding operation and were shocked later to discover that they had become the owners of documents dealing with whiskey.

Appellant bought these whiskey warehouse receipts at prices varying from $21 to $24 per barrel of whiskey, and resold them to his clients at prices varying from $55 to $90 per barrel. A purchase of the warehouse receipts, investors were assured,

was a fair and safe investment which could at any time be liquidated with a high rate of profit. However, at the time of the trial, it was shown, some of the investors had sold their whiskey warehouse receipts at a heavy loss.

Appellant strenuously contends that all representations made to prospective customers, more accurately described by one of appellant's employees as the "sucker list", were made by him and his agents in good faith with no intent to defraud; that they amounted to no more than mere careless misstatements or rosy hopes, which, though they may be morally reprehensible, do not spell out a fraudulent scheme within the condemnation of the federal statute. Even a casual reading of the literature issued by appellant and of the record in this case shows clearly that this contention is utterly lacking in substance or merit.

This Court has had recent occasion to consider the element of fraudulent intent as used in the Mail Fraud Statute. In Aiken v. United States, 4 Cir., 108 F.2d 182, 183, Judge Dobie said: "Fraudulent intent, as a mental element of crime, (it has been observed) is too often difficult to prove by direct and convincing evidence. In many cases it must be inferred from a series of seemingly isolated acts and instances which have been * * * aptly designated as badges of fraud. When these are sufficiently numerous they may in their totality properly justify an inference of a fraudulent intent; and this is true even though each act or instance, standing by itself, may seem rather unimportant. Analogies are always dangerous but sometimes rather helpful. So the old analogy of the rope seems in order; any single strand may easily be pulled apart, but many weak strands combined into a single rope may have such tensile strength as to resist the efforts even of a giant to tear it asunder". See also United States v. New South Farm & Home Company, 241 U.S. 64, 36 S.Ct. 505, 60 L.Ed. 890; United States v. Spielberger, D.C., 28 F.Supp. 380.

Without discussing or even enumerating seriatim the many badges of fraud in the instant case, we are of the opinion that the entire background and plan of operation of appellant and his associates gave rise to a nefarious scheme and artifice to defraud and obtain money from inept investors by pretenses and promises that were obviously both false and fraudulent. "Schemes to defraud depend for success not on what men can do, but upon what they may be made to believe, and the credulity of mankind remains yet unmeasured." O'Hara v. United States, 6 Cir., 129 F. 551, 555.

Accordingly, the judgment of the district court is affirmed.

Affirmed.