## DEAVER v. UNITED STATES.
### No. 9043.

United States Court of Appeals
District of Columbia.

Argued April 5, 1946.

Decided June 3, 1946.

Mr. Errett G. Smith, of Washington, D. C., with whom Mr. Robert H. McNeill, of Washington, D. C., was on the brief, for appellant.

Mr. Ray L. Jenkins, Assistant United States Attorney, of Washington, D. C., with whom Mr. Edward M. Curran, United States Attorney, of Washington, D. C., was on the brief, for appellee. Messrs. Charles B. Murray and Sidney S. Sachs, Assistant United States Attorneys, both of Washington, D. C., also entered appearances for appellee.

Before EDGERTON, CLARK, and WILBUR K. MILLER, Associate Justices.

CLARK, Associate Justice.

This is an appeal from a conviction under the Federal Mail Fraud and Conspiracy Statutes.[1] Appellant and certain other defendants were indicted for their use of the mails in connection with the development, promotion and sale of burial lots in the National Capital Memorial Park Cemetery located near Muirkirk, Prince Georges County, Maryland, adjacent to the Washington-Baltimore highway. This appeal is taken from the conviction in the second trial, the conviction in the first

[1] 18 U.S.C.A. § 338: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises * * *, shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, postal card, package, writing, circular, pamphlet, or advertisement, whether addressed to any person residing within or outside the United States, in any post office, or station thereof, or street or other letter box of the United States, or authorized depository for mail matter, to be sent or delivered by the post office establishment of the United States, or shall take or receive any such therefrom, whether mailed within or without the United States, or shall knowingly cause to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such letter, postal card, package, writing, circular, pamphlet, or advertisement, shall be fined not more than $1,000, or imprisoned not more than five years, or both."

18 U.S.C.A. § 88: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

having been set aside by reason of the probable bias of one of the jurors.

It appears from the record that appellant and his associates conceived of this particular operation in the early part of 1934 and shortly thereafter organized and set up Washington offices for two corporations. One was called the National Capital Memorial Park, Inc., which was to perform the land acquisition and owning functions. The other was known as the National Capital Company, and was, by inter-company contract, the exclusive agency for selling burial plots for investment purposes. Proceeds from the sales were split 50–50 between the companies.

The sales program was founded on "prospect lists" made up of the holders of greatly depreciated securities. The security holders were approached by salesmen who represented that if the customer would turn over his securities, with an order to sell, that the proceeds would be invested in blocks of burial plots, and that in about two years, when the Memorial Park was to have reached an advanced stage of development, the space could be resold at a handsome profit through a "resale division" of the National Capital Company, to be established, thus enabling the security holder to recoup the losses on his depreciated securities. To say that the sales campaign was effective is an understatement. Between April 13, 1934, and February 1940, when the companies went into receivership, nearly $1,500,000 was taken in from the sale of cemetery sections.

Government witnesses residing in Rhode Island, New Jersey, Maryland, New York, North Carolina, Virginia and Pennsylvania testified as to a variety of misrepresentations made to them by salesmen. The evidence shows that customers were induced to part with their securities by promises that spectacular returns would be forthcoming, that various fraternal orders had purchased, or were going to purchase, large areas in the park, that magnificent plans were drawn and work was under way on the development of the property, that burial space in and around the Washington area was very limited, thus assuring a brisk resale of the sections. During the course of the operation the mails were used to communicate with salesmen and with customers—particularly with the latter as time went by and the promised rewards did not materialize.

█ In prosecuting this appeal twenty-one errors are assigned. "The principal point upon which the appellant means to insist * * * is the insufficiency, i. e., the incompleteness, of the indictment's attempted charges of a 'scheme' and of 'fraud' ". We shall deal with this argument first. It is appellant's contention that the indictment is drawn with such lack of particularity as to fail to describe a scheme which did defraud or could have defrauded anyone, thus, it is said to have failed to inform him of the "nature and cause of the accusation" and consequently violated his rights under the Sixth Amendment of the United States Constitution. Specifically, he sets up the fact that it was not charged that there was any fraudulent failure to convey title to the land sold, or account for the monies or securities received from the customers. Moreover, he urges that the misrepresentations described were no more than "seller's talk" or "puffing".

It is appellant's contention that the customers suffered no more than disappointed hopes, and that the indictment recognizes that fact by not charging any specific, legal loss inflicted on the investment purchasers. We think that much of the appellant's argument is predicated on an erroneous and too limited conception of the scope of the statute under which the indictment was brought. In terms of identifying and advising the acused of the offense with which he is charged, the indictment clearly meets the accepted standards. See, for example,[2] Hendricks v. United States, 223 U.S. 178, 184, 32 S.Ct. 313, 56 L.Ed. 394; United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588; United States v. Farmer

---

[2] In Brown v. United States, 7 Cir., 143 F. 60, 62, 63, the court pointed out, "But it is to be borne in mind that what is required is reasonable, not absolute or impracticable, particularly of statement * * *."

D.C., 218 F. 929, 930; Hyde v. United States, 8 Cir., 198 F. 610, 611.

Appellant calls our attention to what is not charged in the indictment, but we are here concerned with determining its sufficiency by examining what it did charge. The first 22 counts of the indictment were directed to the offenses charged as violative of the Mail Fraud Statute, 18 U.S.C.A. § 338, and the 23d count to the alleged violation of the Conspiracy Statute, 18 U.S.C.A. § 88. Upon a careful examination of the entire indictment, we see no merit in appellant's attack upon it. The "scheme", as a comprehensive plan of operation, is described step-by-step from its conception through execution. This description embraces such passages as, " * * * to establish * * * an office * * * for the purpose of selling to the persons intended to be defrauded cemetery lots or burial rights * * * ", and, "By * * * correspondence and by personal interviews it was represented to the persons intended to be defrauded that the National Capital Company had a plan which was designed to recoup the losses suffered by the persons * * * in connection with their * * * securities * * * ". The indictment goes on to enumerate the false and fraudulent representations by which the customers were induced to part with their property. It is then charged that after devising the plan, " * * * the defendants did * * * knowingly, and feloniously place and cause to be placed in the Post Office of the United States * * * a letter * * * ".

▆ As for the indictment's failure to enumerate losses, we need only call attention to the fact that the statute makes the "scheme to defraud" and its furtherance through the mails the offense. The scheme need not be practical or successful in the sense that its perpetrators reap a harvest. The damage calculated to result may be large or small. See Glover v. United States, 5 Cir., 125 F.2d 291, 293, certiorari denied 316 U.S. 690, 62 S.Ct. 1280, 86 L.Ed. 1761; LeMore v. United States, 5 Cir., 253 F. 887, certiorari denied 248 U.S. 586, 39 S.Ct. 184, 63 L.Ed. 434. It is enough if the "artifice" is designed to deceive as to the substantial identity of the thing to be received. Sparks v. United States, 6 Cir., 241 F. 777, 782.

Here the customers thought they were getting burial sections in a rapidly developing cemetery park, they were led to believe that the market for plots was exceedingly good, and that defendant and his associates would launch a resale program that would net the investment purchasers a generous profit. The deception charged went to the very substance of the transaction.

▆ Replete as it is with positive descriptions of the false promises as well as the identification of the sponsors of the undertaking and their victims, we do not think that the defendant can be heard to complain that the indictment is "without heart" or that he was prejudiced in his defense by reason of the paucity or incompleteness of the charges made against him.[3]

▆ The remaining points of error urged by appellant can be grouped generally under the headings of, (a) the trial, and (b) the instructions. In the former category appellant contends that he was limited in cross-examination of one government witness, and prejudiced by the government's failure to put on the stand another witness who is said to have written a favorable letter concerning this project and who, allegedly, would have been of some worth to the defense. The question which was barred on cross-examination was whether the witness considered any of certain letters "fraudulent or any part of a scheme to defraud at the time" he received them. Obviously such a question called for answer in the form of a legal conclusion. The objection to it

[3] We observe also that the defendant did not request a bill of particulars, and has not advanced any specific designation as to how he was misled, uninformed or unprepared for trial. See Myers v. United States, 8 Cir., 15 F.2d 977, 985; Kaufmann v. United States, 3 Cir., 282 F. 776, 778, certiorari denied, 260 U.S. 735, 43 S.Ct. 96, 67 L.Ed. 488.

was quite properly sustained. We know of no rule which holds it error for the government to fail to put on the stand a witness, not deemed necessary to its case, who might conceivably have given testimony favorable to the defendant. It is for the defendant to make his own defense.

Similarly, we find no error in the trial court's ruling which permitted the defendant to be cross-examined on the matter of his having taken a carpet from the park chapel for his personal use during the dying days of the project. This examination, as well as that concerning two letters which appellant wrote in September of 1939, had a direct bearing on the accused's condition of mind concerning the entire undertaking. It was properly allowed as going to show that the defendant regarded the scheme which he was promoting by direct sales contact and the use of the mail as primarily an operation for personal profit, without concern for the other investors.

■ As for the instructions, appellant in his brief attacks particularly the trial court's failure to grant his instruction number 37 relating to the necessity for a "criminal intent". Yet, we find that the court sufficiently charged as follows: "You are further charged that the fraud or conspiracy charged in the indictment in this case involves an evil mind and a wrongful intent. The purpose of the statute relating to frauds as affecting this case is to protect against intentional efforts to defraud others. If the defendant acted in good faith and had honest belief in the enterprise in which he was engaged, and in any statements which he made or authorized to be made, or of which he had

knowledge, then he is not guilty of any wrong or crime and your verdict should be not guilty." We do not think it necessary to deal at length with the other objections made to the instructions for we have examined them carefully and find that in each instance the trial court carefully, accurately and adequately set forth the guide lines for the jury's deliberation.

■ The verdict which was reached is amply supported by the evidence, and though the appellant does not specifically contend otherwise, there runs through his briefs and argument the plea that he is the innocent victim of a prosecution predicated on nothing more than the financial failure of a legitimate and fundamentally honest business venture. Because of this element in the appeal we are impelled to discuss briefly the basic features of prosecutions of this character as delineated in other decisions.

■ First, it is to be noted that the statutes under which the indictment was brought are broad in scope and not limited by the common law rules applicable to a prosecution for "false pretenses".[4] The fraudulent nature of the plan may be inferred from a series of isolated acts.[5] Prosecution is not limited to cases where the victim gets nothing for the money or property which is taken from him.[6] Similarly, a "scheme" may be fraudulent though no misrepresentation is made.[7] The use of the mail may be the sole, or only an incidental, item in furthering the project.[8] "Seller's talk", if "within any proper and reasonable bounds" is not indictable,[9] but honest belief in business success will not serve to purify a scheme that is in fact fraudulent.[10] Likewise, the

[4] Durland v. United States, 161 U.S. 306, 313, 16 S.Ct. 508, 40 L.Ed. 709; Foshay v. United States, 8 Cir., 68 F.2d 205, 210, certiorari denied, 291 U.S. 674, 54 S. Ct. 531, 78 L.Ed. 1063.

[5] Nassan v. United States, 4 Cir., 126 F.2d 613, 615; Gates v. United States, 10 Cir., 122 F.2d 571, certiorari denied, 314 U.S. 698, 62 S.Ct. 483, 86 L.Ed. 558.

[6] Sparks v. United States, 6 Cir., 241 F. 777; Harris v. Rosenberger, 8 Cir., 145 F. 449, 455, 13 L.R.A.,N.S., 762.

[7] Kaufmann v. United States, 3 Cir., 282 F. 776, certiorari denied, 260 U.S. 735, 43 S.Ct. 96, 67 L.Ed. 488.

[8] Brown v. United States, 8 Cir., 143 F. 60, 65, certiorari denied, 202 U.S. 620, 26 S.Ct. 765, 50 L.Ed. 1174.

[9] Harrison v. United States, 6 Cir., 200 F. 662; United States v. Staples, D.C., 45 F. 195, 198.

[10] Foshay v. United States, 8 Cir., 68 F. 2d 205, 210, certiorari denied, 291 U.S. 674, 54 S.Ct. 531, 78 L.Ed. 1063.

monumental credulity of the victim is no shield for the accused.[11]

The above features of the offense are cited because they seem particularly applicable to the instant case. Here, from the very outset of the undertaking, the evidence reflects a strong color of fraud. It was shown that a two part corporate structure was built to perform a job that could as well been done by one company. The prospect lists were developed from the holders of greatly depreciated securities. It was testified that the salesmen promised to market the securities turned over to them at better than going prices. The investors were told that development progress was great, whereas in fact it was not. It was promised that the market for re-sale of the properties sold investors was bound to be brisk, when actually, if the promoters had been at all honest or informed in the matter, as they might be expected to be, they knew, or should have known, that the market for burial space was anything but good. The promises for large returns on small investments in the relatively short span of two years could not have been made or condoned, as they were over a period of years, by a thoroughly legitimate business promoter. The evidence shows that the defendant was a key figure in the entire enterprise, that, perforce, he knew what was going on in all branches of the business, and that he either actively or passively approved of the tactics of associates. He pacified the complaining customers, both in person and by mail.[12] The conviction is just.

Affirmed.

[11] Nassan v. United States, supra, note 5 at page 615 of 126 F.2d.

[12] See Brady v. United States, 9 Cir.,

26 F.2d 400, certiorari denied, 278 U.S. 621, 49 S.Ct. 24, 73 L.Ed. 542.