## UNITED STATES v. WHITMORE et al.
### No. 21684.

United States District Court
S. D. California, Central Division.
May 21, 1951.

Ernest A. Tolin, U. S. Atty., Ray H. Kinnison and Herschel E. Champlin, Asst.

U. S. Attys., all of Los Angeles, Cal., for plaintiff.

Charles H. Carr, Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

The indictment in seventeen counts is under the mail fraud statute, 18 U.S.C.A. § 1341, and charges the defendants Ralph Whitmore and Harold Cowan with devising a scheme to defraud and using the mails to perpetrate it.

In substance, the indictment states that the defendants advertised over the network of certain radio stations throughout the United States and local radio stations and newspapers in Los Angeles County, California, Christmas tree decorations and ornaments for sale. The prospective customers were requested to send one dollar by mail to the radio station to which they were listening or mail directly to the defendants, who were doing business under the name of "Christmas Ornaments" and the firm name of "Cowan & Whitmore", in exchange for which they would receive, through the mail, Christmas tree decorations and ornaments of superlative quality.

The fraudulent character of the scheme is stated in this language: "Prior to November 21, 1950, and continuing to on or about December 25, 1950, the defendants Ralph Whitmore and Harold Cowan devised and intended to devise a scheme and artifice to defraud purchasers and prospective purchasers of certain Christmas tree decorations, which said persons, the defendants, under their own names and under the fictitious name of 'Christmas Ornaments' and under the firm name of 'Cowan and Whitmore', and other names and styles to the grand jury unknown, would induce to purchase one or more sets of certain Christmas tree decorations, and to obtain money and property by means of the following false and fraudulent representations, pretenses, and promises, well knowing at the time that the representations, pretenses, and promises would be false when made; that said product would be 'the most sensational Christmas tree ornament package of all time', also, 'the most beautiful Christmas tree ornaments you have ever seen', also, '85 out-of-this-world colorful, glittering ornaments that will make your tree the talk of your neighborhood'."

Seventeen separate mailings to seventeen different persons within the County of Los Angeles are recited, each constituting a separate count in the indictment.

The defendants have moved to dismiss the indictment on the ground that none of the counts in the indictment states an offense. Rule 12(b)(2), Federal Rules of Criminal Procedure, 18 U.S.C.A. More particularly, it is argued that the indictment does not, in any of its counts, charge a scheme to defraud, because the "glowing" characterizations of the ornaments are "purely puffing, matters of opinion, and are representations for which there is no standard or norm to determine their truth or false statement."

So, while the offense charged involves false advertising by means of radio and newspapers, we are confronted, as in all cases of this character, with the fundamental problem of the type of schemes denounced by the statute.

I

"The Scheme to Defraud" Under
the Mail Fraud Statute

A scheme to defraud is an essential element of the offense, without which the use of the mails cannot be illegal. United States v. Young, 1914, 232 U.S. 155, 161, 34 S.Ct. 303, 58 L.Ed. 548; Havener v. United States, 10 Cir., 1931, 49 F.2d 196, 198; Mazurosky v. United States, 9 Cir., 1939, 100 F.2d 958, 961; United States v. Crummer, 10 Cir., 1945, 151 F.2d 958, 962–963. And see writer's opinion in United States v. Corlin, D.C.Cal.1942, 44 F. Supp. 940, 942.

In interpreting the statute, the Courts have made it reach the greatest variety of stratagems aimed at obtaining money or property fraudulently through the use of the mails, which the cunning of tricksters has devised. Typical of some of the recent ones are United States v. Buckner, 2 Cir.,

1940, 108 F.2d 921; Hart v. United States, 5 Cir., 1940, 112 F.2d 128; Shushan v. United States, 5 Cir., 1941, 117 F.2d 110, 115, 133 A.L.R. 1040; United States v. Crummer, 10 Cir., 1945, 151 F.2d 958; United States v. Grayson, 2 Cir., 1948, 166 F.2d 863.

Judge Learned Hand, in a leading case, has indicated the means for recognizing the badge of fraud,—the most essential of which being what he calls "the divergence between the promised performance and the promisor's belief that he could perform". Knickerbocker Merchandising Co. v. United States, 2 Cir., 1926, 13 F.2d 544, 545. In the same case he has stated: "* * * that although a man might not be charged for his honest beliefs, however imbecile they might be, it was not necessary to show that he disbelieved what he said. *Some utterances are in such form as to imply knowledge at first hand, and the utterer may be liable, even though he believes them, if he has no knowledge on the subject. And all unconditional utterances, intended to be taken seriously, imply at least a belief, and, if the utterer does not believe them, they are false, though his mind be quite indeterminate as to their truth.*" 13 F.2d at page 546. (Emphasis added.)

Or, as Judge William Healy has put it, speaking for the Court of Appeals for the Ninth Circuit: "The person devising the fraudulent scheme must intend in some manner to delude the person upon whom the scheme is to be practiced." Norton v. United States, 9 Cir., 1937, 92 F.2d 753, 755.

■ These declarations stem from the accepted premise that a purchaser is *entitled to receive what he has been led to believe he would receive.* He is defrauded if the promised expectations *do not* materialize. As said in one of the older cases, Harris v. Rosenberger, 8 Cir., 1906, 145 F. 449, 458, 13 L.R.A., N.S., 762: "Our conclusion is that when a business, even if otherwise legitimate, is systematically and designedly conducted upon the plan of inducing its patrons, by means of false representations, to part with their money *in the belief that they are pur-*chasing something different from, superior to, and worth more than, what is actually being sold, it becomes an objectionable scheme or device within the intendment of sections 3929 and 4041, although what is being sold may approximate in commercial value the price asked and received. The difference between such a scheme or device and those where nothing whatever or nothing at all equivalent in value is intended to be returned for the money obtained is one of degree only, but not of principle. Both are grounded in deceit, operate injuriously upon the public, and constitute the obtaining of money by means of false pretenses. *A purchaser is entitled to receive what he is induced by the vendor's representations to believe he is ordering and paying for, and not something which he does not order and may not want at any price.*" (Emphasis added.) See, Deaver v. United States, 1946, 81 U.S.App.D.C., 148, 155 F.2d 740, 744.

## II

### The "Scheme to Defraud" and Civil Fraud

■ In the application of these principles, it may be said generally, that courts consider that whatever would be fraudulent by common-law principles is a scheme to defraud under the statute. Foshay v. United States, 8 Cir., 1933, 68 F.2d 205, 210–211; United States v. Buckner, 2 Cir., 1940, 108 F.2d 921, 926.

The converse, however, is not necessarily true. For "the scheme to defraud" punished by the statute is more inclusive than common law "fraud". Durland v. United States, 1896, 161 U.S. 306, 313, 16 S.Ct. 508, 40 L.Ed. 709. At common law, for instance, mere expressions of opinion as to matters which are not the subject of definite verification, such as value, are considered harmless. Restatement, Torts, Secs. 541–542; 37 C.J.S., Fraud, § 57; Southern Development Company v. Silva, 1888, 125 U.S. 247, 255–256, 8 S.Ct. 881, 31 L.Ed. 678; Vulcan Metals Co., Inc., v. Simmons Mfg. Co., 2 Cir., 1918, 248 F. 853, 856–857; Sacramento Suburban Fruit

Lands Co. v. Melin, 9 Cir., 1929, 36 F.2d 907, 910, 917; Kohler v. Jacobs, 5 Cir., 1943, 138 F.2d 440, 443; Cox v. Westling, 1950, 96 Cal.App.2d 225, 228, 215 P.2d 52. However, this principle does not obtain in cases arising under this statute. As said in United States v. Rowe, 2 Cir., 1932, 56 F.2d 747, 749: "True, the law still recognizes that in bargaining parties will puff their wares in terms which neither side means seriously, and which either so takes at his peril (Vulcan [Metals] Co. v. Simmons, [2 Cir.,] 248 F. 843); *but it is no longer law that declarations of value can never be a fraud.* Like other words, they get their color from their setting, and mean one thing when exchanged between traders, and another when uttered by a broker to his customer. *Values are facts as much as anything else; they forecast the present opinions of possible buyers and sellers, and concern existing, though inaccessible facts.* Such latitude as the law accords utterances about them, depends upon the hearer's knowledge that the utterer expects him to use his own wits; and while it may once have been true that one might safely use them to stuff any gull one brought to hand, *liability has expanded as the law has become more tender towards credulity.*" (Emphasis added.) And see, United States v. Grayson, 2 Cir., 1948, 166 F.2d 863, 866.

■ Again, damage or loss must flow from fraud before it become civilly actionable. Deaver v. United States, 1946, 81 U.S.App.D.C. 148, 155 F.2d 740, 743. But this principle does not apply to prosecutions under the present statute. The reason is stated in one of the cases already cited: "A man is none the less cheated out of his property, when he is induced to part with it by fraud, because he gets a quid pro quo of equal value. It may be impossible to measure his loss by the gross scales available to a court, but he has suffered a wrong; he has lost his chance to bargain with the facts before him. That is the evil against which the statute is directed." United States v. Rowe, supra, 56 F.2d at page 749.

## III
### "Trader's Talk" or "Puffing" as Fraud

And, because the Courts insist that, regardless of the value of what the victim received, fraud lies in the disparity between what he was promised and what he actually received,—see, Rude v. United States, 10 Cir. 1935, 74 F.2d 673, 676,—they will find fraud in the type of exaggeration of the worth of goods,—"trader's talk" or "puffing", as it is called,—which is tolerated in the law of civil liability.

Earlier decisions of the type on which the defendants rely,—such as United States v. Staples, D.C.Mich. 1890, 45 F. 195, 198; Harrison v. United States, 6 Cir., 1912, 200 F. 662, 665,—stand repudiated by the cases already cited. And they were given the *coup de grâce* by the Supreme Court in United States v. New South Farm & Home Company, 1946, 241 U.S. 64, 71, 36 S.Ct. 505, 507, 60 L.Ed. 890, when the Court said, in construing this statute: "Mere puffing, indeed, might not be within its meaning (of this, however, no opinion need be expressed); that is, the mere exaggeration of the qualities which the article has; but when a proposed seller goes beyond that, assigns to the article qualities which it does not possess, does not simply magnify in opinion the advantages which it has, but invents advantages and falsely asserts their existence, he transcends the limits of 'puffing' and engages in false representations and pretenses. *An article alone is not necessarily the inducement and compensation for its purchase. It is in the use to which it may be put, the purpose it may serve; and there is deception and fraud when the article is not of the character or kind represented and hence does not serve the purpose. And when the pretenses or representations or promises which execute the deception and fraud are false, they become the scheme or artifice which the statute denounces.*" (Emphasis added.)

■ In the light of what has just been said, the representations set forth in the indictment that the package would be "the most sensational Christmas tree ornament package of all time", and the statement

that the package consisted of "85 out-of-this-world colorful glittering ornaments that will make your tree the talk of your neighborhood", go beyond the exaggeration of "the most beautiful Christmas tree ornaments you have ever seen". Together, they are of the type which Judge Learned Hand, in colorful language, has characterized as " * * * the usual obbligato of dishonest and lurid puffing, the common tactic which has so often proved successful with guileless investors of small means". United States v. Cotter, 2 Cir., 1932, 60 F.2d 689, 690.

The indictment, in setting forth the scheme, does not, as did the older forms, allege specifically wherein the representations are false. It alleges merely that they were made, the defendants "well knowing at the time that the pretenses, representations, and promises would be false when made". This conforms to the standard form recommended by the Federal Rules of Criminal Procedure,—Form 3, Federal Rules of Criminal Procedure, 18 U.S.C.A. —and is legally adequate. Any complaint that the lack of particularity places the defendants at a disadvantage would be dispelled by the fact that the Court, on May 7, 1951, as requested by the defendants, ordered the Government to furnish the defendants a written Bill of Particulars requiring them to "Specify by what acts or conduct and in what way the defendants defrauded, attempted to defraud or devised a scheme to defraud the persons who would purchase or purchased Christmas tree decorations from the defendants." Federal Criminal Rules, Rule 7(f), 18 U.S.C.A.

With the particulars so furnished, the defendants have all the facts they need to prepare their defense. And that is all that the defendants in any criminal case are entitled to before trial. See, Glasser v. United States, 1942, 315 U.S. 60, 66, 62 S.Ct. 457, 86 L.Ed. 680; Chew v. United States, 8 Cir., 1925, 9 F.2d 348; United States v. Berg, 3 Cir., 1944, 144 F.2d 173, 176; United States v. Crummer, 10 Cir., 1945, 151 F.2d 958, 963.

The motion to dismiss is, therefore, denied.