DeCARLO, Judge,
dissenting.
I must respectfully dissent. Roviaro v. United States, supra, which the majority cites, does not mandate reversal in this case. Roviaro, requires only the disclosure of the informant’s identity. There is no dispute here that appellant knew the identity of the informant. The only question is whether *798 the State should be required to produce that informant once he has left the jurisdiction.
The majority recognizes that “the government is generally under no obligation to look for defense witnesses,” but it cites Ferrari v. United States, supra, for the proposition that “such an obligation may arise where a showing has been made that a material witness was made unavailable to the defense ‘through the suggestion, procurement, or negligence’ of the State.” Presumably then, the majority finds that the State was “negligent” in failing to prevent Gates from leaving the jurisdiction prior to appellant’s trial, notwithstanding the fact that the majority concedes “Alabama does not have a statutory provision which gives the State authority to detain material witnesses.”
It is difficult to determine what the majority would have had the State do to detain Gates. As the majority notes, Gates “feared for his life.” the State could have offered him protective custody, but what if Gates had refused the protection? Had the State picked up Gates and incarcerated him pending appellant’s trial, we would have no hesitation in ordering that he be released on a writ of habeas corpus. See Stinson v. State, 43 Ala.App. 257, 188 So.2d 287, cert. den. 279 Ala. 691, 188 So.2d 288. There can be no “negligence” in failing to do that which the State is not authorized or empowered to do.
In Ferrari, supra, which the majority cites, the Ninth Circuit found no “negligence” on the part of the government in failing to produce the informant. In Ferrari, the informant had been a special undercover employee of the San Francisco Bureau of Narcotics. The defendant’s attorney attempted to subpoena the informant by leaving a copy of the subpoena with the Bureau of Narcotics. The head of that Bureau stated that “he had no idea of [the informant’s] whereabouts, [and] that he had no intention of finding her.” 244 F.2d at 141. The Ninth Circuit approved the Bureau Chief’s action (or inaction), finding that, since the subpoena was not a court order directed to the Bureau, the chief was under no obligation to comply with it by searching for the informant. Further, despite the contention of the defendant in Ferrari that he “was in jail and not free to search out his witnesses or the government’s,” 244 F.2d at 142, the Ninth Circuit observed:
“We know of no rule which holds it error for the government to fail to put on the stand a witness, not deemed necessary to its case, who might conceivably have given testimony favorable to the defendant. It is for the defendant to make his own defense. ”
244 F.2d at 141, quoting Deaver v. United States, 155 F.2d 740, 744 (D.C.Cir.), cert. den. 329 U.S. 766, 67 S.Ct. 121, 91 L.Ed. 659 (1946) (emphasis supplied by the Ferrari court).
The facts in this case do not warrant carving out a special duty for the State to produce informants who have several outstanding felony charges and who appear to be “working [their] way out of trouble.” The very nature of drug traffic cases suggests that the informants in these cases will, perhaps more often than not, be cooperating with law enforcement officers in order to reduce their own criminal liability. If we follow the rationale employed by the majority, then the State will become, contrary to the assertion of the majority, “the guardian of all those who cooperate in criminal investigations.”